FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE COLTON, EB-3790,      )
      Petitioner,           )
                          )
          v.              )  Civil Action No. 07-282
                          )
ROBERT SHANNON, et al.,    )
      Respondents.       )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Andre Colton for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue.

II. Report:

Andre Colton, an inmate at the State Correctional Institution has presented a petition for a writ of habeas corpus. In an Order entered on March 6, 2007, the respondents and the District Attorney of Allegheny County were directed to answer and show cause, if any, why the relief sought should not be granted.

Colton is presently serving a life sentence imposed following his conviction, by a jury, of second degree murder, burglary and criminal conspiracy at Nos. 199802235 and 199715163, in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on October 20, 1999.[1]

_____

[1] See: Petition at §§ 1-6.

1

An appeal was taken to the Superior Court in which the issues presented were:

I. The trial court erred in failing to grant the motion to sever the case of Mr. Colton from that of Mr. Bundy.

II. The trial court erred in failing to suppress statements made by Mr. Colton to the Allegheny County Police.

III. The verdicts are against the weight of the evidence in that it proves nothing more than the mere presence of Andre Colton at the residence of the victim at the time he was shot and killed.

IV. The evidence is insufficient to establish any agreement to commit any crime between Mr. Colton and his co-defendant, David Bundy.

V. The Commonwealth withheld evidence that Kenneth Matthews, the Commonwealth's key witness, was a key actor in an ongoing investigation into the operations of a major drug ring in Pittsburgh and was the subject of an arrest warrant, a fact known to the investigating detectives and county police officers.[2]

On October 29, 2001, the judgment of sentence was affirmed.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which

the issues presented were:

I. The trial court erred in failing to grant the motion to sever the case of Andre Colton from that of alleged co-conspirator David Bundy.

II. The trial court erred in failing to suppress statements made by Andre Colton to the Allegheny County Police.

III. The Commonwealth withheld evidence that Kenneth Matthews, the Commonwealth's key witness, was a key actor in an ongoing investigation into the operations of a major drug ring in Pittsburgh, and was the subject of an arrest warrant, a fact known to the investigating detectives and county police officers.[4]

_____

[2] See: Exhibit 25 to the answer of the Commonwealth.

[3] See: Exhibit 27 to the answer of the Commonwealth.

[4] See: Exhibit 29 to the answer of the Commonwealth.

On April 10, 2002, leave to appeal was denied.[5]

On December 10, 2002, the petitioner submitted a post-conviction petition to the Court of Common Pleas.[6] That petition, as amended, was dismissed on July 11, 2005.[7] A notice of appeal was filed, and upon motion, the Superior Court remanded the matter for a hearing on whether the petitioner had waived his right to counsel on appeal from the denial of post-conviction relief.[8] A hearing was conducted and on September 27, 2005, the Court determined that the petitioner had knowingly, intelligently and voluntarily waived his right to counsel on appeal from the denial of post-conviction relief.[9] The petitioner then filed a pro se brief in the Superior Court in which he raised the following issues:

> I. Did the PCRA court err in finding that trial counsel was not ineffective by failing to request a limiting and/or cautionary instruction regarding other bad acts evidence.

> II. Did the PCRA court err in finding that trial counsel was not ineffective for not objecting to the testimony of the two minor witnesses without conducting a pre-trial determination of competency.

> III. Was PCRA counsel ineffective for failing to raise trial counsel's ineffectiveness for not objecting when the trial court gave two conflicting instructions to the jury.

> IV. Was PCRA counsel ineffective for failing to raise trial counsel's ineffectiveness for not objecting when the trial court's instructions omitted essential elements regarding burglary and conspiracy..

---

[5] See: Exhibit 30 to the answer of the Commonwealth.

[6] See: Exhibit 31 to the answer of the Commonwealth.

[7] See: Exhibit 44 to the answer of the Commonwealth.

[8] See: Exhibit 49 to the answer of the Commonwealth.

[9] See: Exhibit 52 to the answer of the Commonwealth.

V. Was PCRA counsel ineffective for failing to raise trial counsel's ineffectiveness by failing to object to the improper closing arguments of the prosecutor.

VI. Was PCRA counsel ineffective for failing to raise trial counsel's ineffectiveness for stipulating to introduction of appellant's prior conviction absent proof that the crimes involved dishonesty.

VII. Was PCRA counsel ineffective for failing to raise trial counsel's ineffectiveness for failing to request that the question of voluntariness be submitted to the jury.[10]

On May 17, 2006, the Superior Court affirmed to denial of post-conviction relief.[11]

On June 13, 2006, the petitioner submitted a petition for allowance of appeal to the

Pennsylvania Supreme court setting forth the following issues for consideration:

I. Did the Superior court err in finding that trial counsel was not ineffective for failing to request the trial court to give a limiting instruction regarding prior criminal acts.

II. Did the Superior Court err in finding that trial counsel was not ineffective for failing to object to the testimony of two minor witnesses absent a pre-trial colloquy to establish their competency.

III. Did the Superior Court err in finding that PCRA counsel was not ineffective for failing to raise trial counsel's ineffectiveness by not objecting when the trial court gave two conflicting instructions in its charge to the jury.

IV: Did the Superior Court err in finding that PCRA counsel was not ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the trial court's instructions which omitted a material element of the crime [of] burglary.[12]

Leave to appeal was denied by the Pennsylvania Supreme Court on November 8, 2006.[13]

---

[10] See: Exhibit 54 to the answer of the Commonwealth.

[11] See: Exhibit 56 to the answer of the Commonwealth.

[12] See: Exhibit 58 to the answer of the Commonwealth.

[13] See: Exhibit 59 to the answer of the Commonwealth.

4

On February 22, 2007, Colton executed the instant petition alleging that he is entitled to habeas corpus relief on that grounds that:

> I. Ineffective assistance of trial counsel for failing to request a cautionary instruction following introduction of prior bad acts evidence [relating to petitioner's prior drug activity].

> II. Trial counsel's failure to object to the testimony of two minor witnesses in the absence of a pre-trial competency determination.

> III. Trial counsel's failure to object when the trial court gave conflicting instructions which omitted an essential element of the crime [that the murder had to be in furtherance of the burglary for a second degree murder conviction]. Upon request by the jury, the trial court charged correctly but did not inform the jury to disregard the erroneous instruction.

> IV. Trial counsel's failure to object when the trial court's charge to the jury omitted essential elements of burglary and conspiracy. The trial court's initial instruction to the jury failed to inform the jury that a person licensed or privileged to enter cannot be guilty of burglary. Upon inquiry of the jury, the trial court attempted to clarify the jury's confusion by erroneously instructing them that they could find petitioner guilty as a conspirator for crimes he did not agree to commit.

> V. The Commonwealth withheld evidence that one of its witnesses, Kenneth Matthews, was key actor in an ongoing investigation of a major drug ring in Pittsburgh and was [the] subject of an arrest warrant. The Commonwealth failed to disclose that information despite it being known to investigating detectives and Country police officers.[14]

The Commonwealth concedes that the instant petition has been timely filed and that the petitioner has exhausted the available state court remedies on the issues which he seeks to raise here.[15]

The background to this litigation is set forth in the October 29, 2001 Memorandum of the Superior Court in which it is noted:

---

[14] See: Petition at § 12.

[15] See: Answer at pp.21,23.

5

Curtis Hefllin's son, Jamar, testified he watched his father open their front door; appellant was there. He heard appellant tell his father he could pay $300 of a $400 debt, which his father accepted and took upstairs. After his father went upstairs, another man wearing a mask entered the house. Appellant signaled to the man by pointing up the stairs. The man nodded and went upstairs. Jamar heard gunshots and appellant ran out the door. The masked man ran down the stairs and out the front door. Jamar selected appellant's photo from a photo array.

The victim's eight-year-old daughter was upstairs doing homework with her father when he left to answer the front door. When he came back, he brought her two-year-old brother with him. Moments after her father entered the room, a man wearing a *Scream* mask came up the stairs with a gun. The man shot her father, then ran back down the stairs.

Kenneth Matthews drove appellant and co-defendant, David Bundy, to the victim's home. Matthews testified appellant stated, "if the dude tries to play me, we're going to get him." Matthews, Bundy, and appellant walked towards the house. Matthews waited outside and appellant went into the house. Bundy put on a mask and pulled out a gun. After a few moments, Matthews saw appellant signal to Bundy to enter the house and then point up the stairs. When Matthews heard a gunshot, he ran back to his car. Appellant and Bundy jumped in the car and Matthews drive away. He heard appellant ask Bundy, "did you shoot him?" and Bundy reply, "I don't know."

Appellant was arrest a few days later. Following a jury trial , he was found guilty and sentenced to life imprisonment.[16]

Four of the five issues which the petitioner seeks to raise here concerns his claim of ineffective assistance of counsel. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient

---

[16] See: Exhibit 27 at pp.1-2.

6

performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one."). Against his background we examine his claims.

The first issue which the petitioner seeks to raise here is that counsel was ineffective for failing to request a cautionary instruction following the introduction of evidence regarding his prior drug dealings.  This testimony emerged during the prosecution's questioning of Kenneth Matthews wherein he stated that he knew the petitioner from prior drug dealings and had driven the petitioner to the victim's home on other occasions in connection with the petitioner's drug transactions.[17] The petitioner's defense was that he was at the victim's home to repay a debt

---

[17] See: Trial Transcript at pp. 366-369.

when two masked men entered; that a gun was discharged and that he fled from the house.[18]

 As the trial court observed:

> This is a drug-related homicide. It would be impossible to try this case without evidence of drug activity. The drugs allegedly explain the reason for the burglary and conspiracy which is part of the same criminal episode. The defendant's motion to limit the testimony of Kenneth Matthew regarding his prior history of providing a jitney service to the defendant for the purpose of drug transactions is denied.[19]

 This pre-trial conclusion of the trial court clearly has support in the trial evidence which is suggestive of drug involvement and events evolving therefrom. It also comports with the Pennsylvania model jury instructions which provide for demonstrating a context from which criminal conduct arose.[20] In this context, counsel cannot be deemed ineffective for failing to ask for a cautionary instruction, and the determination of the Pennsylvania courts that this failure is not fatal, clearly falls within the permissible scope of counsel's conduct as approved by the Supreme Court.

 The next issue which the petitioner raises is that trial counsel was ineffective for failing to object to the testimony of the victim's ten and twelve year old children without a prior competency hearing having been conducted. Specifically, the victim's two children Ryan Poindexter and Jamar Warren identified the petitioner as being in the house and testified to the events which occurred.[21]

---

[18] See: TT. at pp. 796-802..

[19] See: Exhibit 13 at pp.1-2.

[20] See: Pa.SSJI(Crim) 3.08

[21]   Ryan Poindexter testified to the events which occurred but was unable to identify any of the actors (TT. 166-176). Jamar Warren testified that the petitioner came to their home and

In reviewing this issue, the Superior Court observed:

Given the age of the witnesses, who were ten and twelve years old at the time of trial, we must conclude that the trial court erred in failing to conduct a separate colloquy in order to determine the witnesses' competency. However, we cannot conclude that Colton has established a meritorious claim of ineffective assistance of trial counsel. The PCRA court's rationale for denying relief on this claim is sound:

> [Colton] also cites trial counsel's failure to object to the testimony of child witnesses absent a competency hearing or cautionary instruction. The female child witness, [R.P.], never placed [Colton] in the home and offered little substantive testimony. The other witness, [J.W.] was ten at the time of trial and offered consistent albeit quiet testimony. There is no evidence of record to indicate that either witness was incompetent. Again. [Colton] failed to demonstrate that he was prejudiced...

The record indicates that the witnesses were able to understand the questions presented. In addition, J.W. was able to express intelligent answers, which reflected his capacity to remember the incident...  Although Colton points out discrepancies in J.W.'s testimony, these discrepancies fall short of establishing that J.W., did not understand his duty to speak the truth.[22]

In addition, as discussed above, the testimony of Jamal and the petitioner largely mirror each other. The only point of departure arose out of Jamal's testimony that the petitioner signaled to the masked man to enter the house and proceed upstairs and this testimony was corroborate by Matthews.

---

was admitted; that a discussion ensued between the victim and the petitioner concerning money owed by the petitioner; that he had observed the petitioner at their home on other occasions; that while the victim was upstairs a masked man entered the house; that the petitioner signaled to the masked individual indicating "upstairs"; that the masked individual went upstairs; that Jamar then heard gunshots and that the petitioner and the masked man then ran from the house (TT.177-187, 201, 204-207, 217).

[22] See: Exhibit 56 at pp.6-7.

9

The conflict in Jamar's testimony is part of the record.[23] To a large extent his testimony is consistent with the petitioner's testimony and the only conflicts arose out of whether in his separate statements he had not always spoken of the alleged gestures by the petitioner. Thus, there is nothing in the record demonstrating that his testimony is any more suspect than that of other witnesses, and as such created an issue of fact for resolution by the jury .Marshall v. Lonberger, 459 U.S. 422 (1983).

In addition, this issue was raised solely in the context of a violation of Pennsylvania evidentiary procedure and as such is not appropriately raised here. Johnson v. Rosemeyer, 117 F.3d104 (3d Cir.1997).

The next two issues which the petitioner raises are that counsel was ineffective for failing to object to the jury instructions explaining that in order to convict of second degree murder, the jury had to conclude that the murder occurred in furtherance of a burglary[24] and for failing to object to the erroneous instructions which neglected to present the essential elements of burglary and conspiracy to the jury.

When called upon to review jury instructions, a federal habeas court must view those instructions as a whole and not parts in isolation. Estelle v. McGuire, 502 U.S. 62 (1991). The Pennsylvania offenses for which the petitioner was convicted are second degree murder, conspiracy and burglary. These are defined as:

---

[23] See: TT. at 201-204, 600, 604 concerning conflicts in whether or not the petitioner gestured to the co-defendant, and thus creates an issue of credibility, but does not impeach Jamal's testimony.

[24] The petitioner does concede that when asked to clarify this instruction, the court properly informed the jury of the elements but failed to instruct the jury to disregard the prior erroneous instruction.

Murder of the second degree— A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.A. 2502(b).

Criminal Conspiracy — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.  18 Pa.C.S.A. 902.

Burglary — A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. 18 Pa.C.S.A. 3502.

In his jury instructions, the trial court defined the crimes charged:

A conspiracy in general terms is an agreement to commit a crime. The agreement constitutes the conspiracy itself even if they never commit the crime that they conspired to commit.

The form of the agreement is not important...

Their agreement does not have to cover the details of the crime. It does not call for all of them to participate in the commission of the crime. They can agree that one of them will do the job. What is necessary is that they do come to a firm and common understanding that a crime will be committed...

Although the agreement itself is the essence of a conspiracy, a defendant cannot be convicted of conspiracy unless he does an overt act in furtherance of the conspiracy...

The crime that they're alleged to have conspired to commit is the same. Homicide.

In order to find a defendant guilty of conspiracy to commit homicide, you must find beyond a reasonable doubt that the following three elements have been proven. Each of the elements must have been proven beyond a reasonable doubt.

First, that the defendant agreed with the co-defendant that one of them would commit the crime of criminal homicide.

Second, that the defendant and his co-defendant intended to promote or facilitate committing the crime of criminal homicide. In other words, they shared the intention to bring about that crime.

Third, that the defendant or the person with whom he conspired did the overt act alleged to have been done by him in furtherance of the conspiracy...

In this case, as to Andre Colton, the overt act alleged is that he gained entry into the residence in furtherance of the conspiracy...  (TT.1026-1029).

* **

[T]he second crime which is alleged and both defendants are accused of this crime is the crime of burglary. In order to find either or both of the defendants guilty of this crime, you must be satisfied that the following four elements have been proven beyond a reasonable doubt.

First, that the defendant entered a certain place ... the residence of Curtis Heflin.

Second, that the place was an occupied structure.

Third, that the defendant entered with intent to commit the crime.

And, fourth, that the place was not open to the public and that the defendant did not have licence or privilege to enter.

If you find that those four elements have been proven beyond a reasonable doubt, you should find the defendant guilty. Otherwise, you must find the defendant not guilty. (TT.1032-1033)

* * *

[T]he defendants are charged with taking the life of Curtis Heflin by criminal homicide ...

First and second degree [murder] are equally serious crimes. Third degree murder is a less serious crime. Now, each of these crimes involves an element called malice. Malice is not simply hatred or ill will. It is a shorthand way of referring to any of three different mental states that the law regards as being bad enough to make a killing murder.

12

Thus, a killing is with malice if the killer acts first with an intent to kill. Second, an intent to inflict serious bodily injury. Or, third, a wickedness of disposition, a recklessness of consequences, a mind regardless of social duty indicating unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life.

An intent to kill, an intent to inflict serious bodily injury or a recklessness of consequences indicating an unjustified disregard for the probability of death and an extreme indifference to the value of human life. Any of those three mental states satisfies the element of malice...

Now, first degree murder is ...

Second degree murder is called felony murder. More serious crimes are called felonies. Burglary is a felony. Because of the seriousness of these crimes, the law regards a killing serious enough to be second degree murder, the felon need not intend to kill anyone or even anticipate that anyone be killed. The wickedness of the felony is thought to supplant the specific intent to kill and constitute and substitute the malice of the crime.

You may find the defendant guilty of second degree murder, that is felony murder, if you are satisfied that the following three elements have been proven beyond a reasonable doubt.

First, that the defendant killed Curtis Heflin; second, that the defendant did so while committing a burglary...  Third, that the defendant was acting with malice.

You can presume that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he committed a burglary.

Now, in the case of Andre Colton, you may find him guilty of this crime only as an accomplice or a co-conspirator, and I will define those concepts for you shortly.

Third degree murder is ...  (TT.1037-1041).

In response to inquiries from the jury, the court delivered further instructions on burglary and second degree murder (TT. 1075-1076, 1080-1081). Specifically, in this regard, the court instructed:

In order to find the defendant guilty of second degree murder, that is felony

13

murder, you must be satisfied that the following three elements have been proven beyond a reasonable doubt.

First, that the defendant killed Curtis Heflin; second, that the defendant did so while committing a burglary; and, third, that the defendant was acting with malice.

Now, you can infer that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he committed a burglary...

Now, in the case of Andre Colton, you may find him guilty of second degree murder if you find that the shooter killed Curtis Heflin; that the shooter did so while he and Andre Colton were partners in committing a burglary; third, that the shooter did the act that killed Curtis Heflin in furtherance of the burglary; fourth, that the defendant was acting with malice.

You can presume or infer that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he and the shooter were partners in committing the burglary.

Because burglary is a crime of inherently dangerous to human life, there does not have to be any other proof of malice (TT.1080-1081).

When reviewing these instructions, the Superior Court stated:

Colton concedes that the trial court's second instruction on second  degree murder was correct.  Our review of the record discloses that during deliberations, the jury asked the trial court to define the crime of burglary as it related to Colton, and the three degrees of criminal homicide. In re-instructing the jury regarding the charges as they applied [to] Colton, the trial court correctly instructed the jury...[25]

In addition, the trial court instructed about accomplices or co-conspirators:

[T]here is no evidence that Andre Colton shot anybody. There is just no such evidence in this case.

However, there are ways in the law in which we can become responsible for the conduct of another. One of them is accomplice liability and the second is co-conspirator liability.

A defendant may be guilty of a crime – is guilty of a crime if he was an

---

[25] See: Exhibit 56 at p.8.

accomplice of the other person who committed it. A defendant does not become an accomplice merely by being present at the scene or by knowing about a crime.

He is an accomplice if with the intent of promoting or facilitating the commission of a crime he aids the other person in committing it.

Now, from the defendant's point of view, he stated to you that a – Mr. Colton's point of view, he stated to you that a masked man came to the door, pointed a gun through the window at him, that he did not know this person, and that out of duress, the result of this gun pointing at him, he opened the door and permitted entry to that masked man.

That evidence that you find, if you find that to be the fact, then obviously he is not guilty of the crime of criminal homicide, because he did not act as a accomplice, but was simply a person who, under duress, admitted a masked and armed person to the house who later committed a homicide.

On the other had, there was evidence presented by the Commonwealth in support of accomplice liability and that evidence comes from Kenneth Matthews in his testimony, as well as the testimony of the young child who said that he gave a signal pointing up to the area where Curtis Heflin was watching television. That evidence should be considered by you as well in determining whether, in fact, Mr. Colton was an accomplice of the shooter.

If you find that all of the elements of the crime have been proven beyond a reasonable doubt and that an accomplice committed that crime, then the person who aided the co-defendant in committing the crime is also guilty of that crime (TT.1054-1056).

The conclusions of the Superior Court regarding the jury instructions,  are clearly supported by the record and are entitled to a presumption of correctness. Additionally, reviewing the instructions as a whole and these challenged instructions in particular, there is no basis upon which to conclude that counsel was ineffective in failing to object to the jury instructions since they correctly set forth the applicable Pennsylvania law.

The final issue which the petitioner raises here is that the Commonwealth committed fundamental error by failing to disclose that its witness, Kenneth Matthews, was the subject of a

criminal prosecution. In reviewing this issue on direct appeal, the Superior Court cast it as a claim arising under Rule 573(B)(1)(a) of the PA.R.Crim.P. which requires the prosecution to disclose all evidence within its possession or control which is favorable to the defense. In explaining why a violation did not occur, the Superior Court observed that the prosecution was unaware of the independent investigation of Matthews being conducted by the State Attorney General's Office and because there was no demonstration that the prosecution was aware of this investigation, there was no violation of Rule 573(B)(1)(a).[26]

The Pennsylvania Rule reflects the holding in Brady v. Maryland, 373 U.S. 83 (1963). In Strickler v. Green, 527 U.S. 263 (1999), the Court made clear that in order to successfully argue a Brady violation, it must be demonstrated that the prosecution knew or should have known of the improper suppression of evidence. As the Pennsylvania courts have set forth, no such claim is made.

Additionally, the petitioner's claim is couched as a violation of a Pennsylvania procedural rule, and is thus not subject to review here. Johnson v. Rosemeyer, supra.

Since the issues which the petitioner raises here are without merit, it is recommended that the petition of Andre Colton for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

---

[26] See: Exhibit 27 at pp.8-9.

16

                                        Respectfully submitted,

                                        s/Robert C. Mitchell,
Entered: May 10, 2007                   United States Magistrate Judge